GULOTTA, Judge.
In this case involving the sale of a stolen movable, we are confronted with the competing possessory rights of a true owner and an innocent purchaser. From a judgment recognizing the purchaser’s superior right to possession, the owner appeals. We affirm.
According to the stipulated facts, Southeast Equipment Co., Inc. (Southeast) purchased, in good faith,[1] a stolen 1979 Caterpillar Loader for $54,000.00 from C. Ogle, through his agent Hattaway International, Inc. (Hattaway). Hattaway is a corporation that customarily sells heavy equipment such as this loader, but Ogle is not. Ogle had consigned the loader to Hattaway for sale.
About two weeks after the sale, the Louisiana State Police seized the machine from Southeast, pursuant to a search warrant alleging it was stolen. Southeast thereafter filed this mandamus action against the State Police to demand return of the machine. J.W. Conner and Son Construction Co. (Conner), owner of the loader at the time it was stolen, intervened and also sought possession.
The trial court rendered judgment ordering the State to return the machine to Southeast as a “good-faith possessor” until Conner reimbursed Southeast the $54,000.00 purchase price. The trial judge reached his decision based on LSA-C.C. Art. 524, which states in pertinent part:
“The owner of a lost or stolen movable may recover it from a possessor who bought it in good faith at a public auction or from a merchant customarily selling similar things on reimbursing the purchase price.”
According to the trial judge, Southeast had a “greater right” to the movable because LSA-C.C. Art. 524 is an “exception” to LSA-C.C. Art. 521, which provides that a person “who has possession of a lost or stolen thing may not transfer its ownership to another.”
Citing LSA-C.C. Art. 521 and LSA-C.C. Art. 2987,[2] Conner contends, on appeal, that neither the suspected thief Ogle, nor his agent, Hattaway, could transfer ownership of the stolen movable. Conner argues that LSA-C.C. Art. 524 has no application because Southeast purchased the machine from Ogle, who is not a “merchant customarily selling” heavy equipment. We disagree.
LSA-C.C. Art. 524 does not expressly require that the “merchant customarily selling similar things...” be the apparent owner of the thing sold; it specified that the good faith purchaser buy it “from” the merchant. We interpret this language to encompass not only direct sales of movables from the merchant’s own inventory, but also consignment sales, as in our case, where the merchant is acting as an agent on behalf of someone else who purports to be the owner.
*1186 Under our interpretation of LSA-C.C. Art. 524, the sine qua non for application of the article is a dealing between the good faith purchaser and a merchant customarily selling similar things. We conclude that if such a merchant conducts the sale, LSA-C.C. Art. 524 applies, whether the merchant is acting as apparent owner or only as an agent for another. This interpretation is consistent with the legislative recognition of the need for balancing the rights of a good faith purchaser and an owner, and comports with the preservation of security of transactions.[3]
We are further persuaded to reach this conclusion by the ambiguous wording of the act of sale in our case. Hattaway’s printed “BILL OF SALE_EQUIPMENT” contains the following warranty of title to Southeast, the “Grantee”:
To have and to hold all and singular the said goods and chattels to said Grantee, his successors and assigns. The undersigned covenants with said Grantee that undersigned is the lawful owner of said chattels; that they are free from encumbrances; that undersigned has a good right to sell the same; that undersigned will warrant and defend same against the lawful claims and demands of all persons.
[[Image here]]
Although the bill of sale is signed by Hattaway as “Agent for Owner: C. Ogle... ”, it conveys an impression that Hattaway is the “undersigned” who is selling the machine and warranting the title. Ogle did not sign the bill of sale. A copy of the sales agreement between Hattaway and Ogle, which would have further clarified Hattaway’s status as agent, was not incorporated in the sale document. Under these circumstances, Southeast could justifiably have believed that it was dealing with an established heavy equipment seller who had a right to sell the loader. Accordingly, we conclude that Southeast purchased the stolen movable “from a merchant customarily selling similar things”, and “in good faith” within the meaning of LSA-C.C. Art. 524.
We are mindful of the competing equities between the true owner and the good faith purchaser who are both innocent victims. Nonetheless, interpreting the language of LSA-C.C. Art. 524, we must give effect to the Legislature’s apparent intent to weigh the equities in the purchaser’s favor under these circumstances. Conner’s recourse may be against Hattaway or any other party responsible for the loss.[4]
Having so concluded, we affirm the judgment of the trial court.
AFFIRMED.
REDMANN, C.J., dissents and assigns reasons.

. The stipulation does not state that Southeast was a “good faith” purchaser. The stipulation states: “Southeast did not know that the loader was stolen or that Hattaway could not sell it.” See also LSA-C.C. Art. 523 for a definition of good faith. Conner acknowledges in brief, however, that Southeast purchased in “good faith”.

. LSA-C.C. Art. 2987 provides:
“The object of the mandate must be lawful, and power conferred must be one which the principal himself has a right to exercise.”

. LSA-C.C. Art. 524 is a reproduction of former LSA-C.C. Art. 3507 of the Louisiana Civil Code of 1870, as incorporated in the Revised Civil Code by Acts 1979, No. 180, and comes from the Code Napoleon, Art. 2280.
For a history of the rules governing the conflict between an owner and a good faith purchaser of a stolen movable, see “Comment, Sales of Another’s Movables — History, Comparative Law, and Bona Fide Purchasers”, 29 La.L.Rev. 329 (1969).

. See Restatement (Second) of Torts § 233; Restatement (Second) of Agency § 343.